**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JILL E. SOUTHWORTH, as TRUSTEE of the JILL SOUTHWORTH REVOCABLE TRUST, et al., | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-00878-RMB-KW |
| v. | ) ) | |
| HARTFORD INVESTMENT FINANCIAL SERVICES, LLC, | ) ) ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS</u>**

Of Counsel:

Harvey J. Wolkoff
Robert A. Skinner
Janna J. Hansen
Allison M. Boscarine
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts  02199-3600

John M. Seaman (#3868)
A. Thompson Bayliss (#4379)
Eric D. Selden (#4911)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware  19807
(302) 778-1000
seaman@abramsbayliss.com
bayliss@abramsbayliss.com
selden@abramsbayliss.com

*Attorneys for Defendant
Hartford Investment Financial Services,
LLC*

Dated:  February 22, 2011

# TABLE OF CONTENTS

**Page**

I.   THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A
     PLAUSIBLE CLAIM THAT HIFSCO'S INVESTMENT MANAGEMENT FEES ARE
     "SO DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE
     RELATIONSHIP TO THE SERVICES RENDERED" ....................................................... 1

     A.   Plaintiff tries to mask the weakness of her claim by altering the
          pleading standard. ................................................................................................2

     B.   The few facts pled do not support a plausible inference that
          HIFSCO's fees could not have been the result of arms-length
          bargaining. ...........................................................................................................5

II.  THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A
     PLAUSIBLE CLAIM THAT HIFSCO'S 12B-1 FEES ARE "SO
     DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE
     RELATIONSHIP TO THE SERVICES RENDERED" ..................................................... 9

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amron v. Morgan Stanley Inv. Advisers, Inc.,*
   464 F.3d 338 (2d Cir. 2006)............................................................................5, 6, 12

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009).................................................................................. passim

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................... passim

*Curran v. Principal Mgmt. Corp.,*
   No. 09 Civ. 00433, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010), *vacated
   in part on other grounds*, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011)......................... passim

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009).............................................................................3, 4, 7

*Gallus v. Am. Express Fin. Corp.,*
   370 F. Supp. 2d 862 (D. Minn. 2005)..................................................................3, 13

*Green v. Fund Asset Mgmt., L.P.,*
   286 F.3d 682 (3d Cir. 2002)...................................................................................6

*Hoffman v. UBS-AG,*
   591 F. Supp. 2d 522 (S.D.N.Y. 2008)..................................................................7, 13

*In re Am. Mut. Funds Fee. Litig.,*
   No. 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009).......................................9

*In re Evergreen Mut. Funds Fee Litig.,*
   240 F.R.D. 115 (S.D.N.Y. 2007) ...........................................................................6

*In re Federated Mut. Funds Excessive Fee Litig.,*
   No. 04-532, 2009 WL 5821045 (W.D. Pa. Sept. 30, 2009)........................................4

*In re Franklin Mut. Funds Fee Litig.,*
   478 F. Supp. 2d 677 (D.N.J. 2007) ....................................................................6, 12

*In re Scudder Mut. Funds Fee Litig.,*
   No. 04 Civ. 1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ...............................13

*ING Principal Protection Funds Deriv. Litig.*,
    369 F. Supp. 2d 163 (D. Mass. 2005) ...................................................................13

*Jones v. Harris Assocs., L.P.*,
    130 S. Ct. 1418 (2010) ............................................................................... passim

*Krantz v. Prudential Inv. Fund Mgmt. LLC*,
    305 F.3d 140 (3d Cir. 2002).................................................................................6

*Levy v. Alliance Capital Mgmt. L.P.*,
    No. 97 Civ. 4672, 1998 WL 744005 (S.D.N.Y. Oct. 26, 1998) .............................13

*Meyer v. Oppenheimer Mgmt. Corp.*,
    764 F.2d 76 (2d Cir. 1985)..................................................................................11

*Meyer v. Oppenheimer Mgmt. Corp.*,
    895 F.2d 861 (2d Cir. 1990)...........................................................................11, 12

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
    248 F.3d 321 (4th Cir. 2001) ................................................................................7

*Mintz v. Baron*,
    No. 05 Civ. 4904, 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009) ............................6

*Olesh v. Dreyfus Corp.*,
    No. 94 Civ. 1664, 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995).............................13

*Sins v. Janus Capital Mgmt., LLC*,
    No. 04-cv-1647, 2006 WL 3746130 (D. Colo. Dec. 15, 2006) .......................3, 6, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................8

*Yameen v. Eaton Vance Distribs., Inc.*,
    394 F. Supp. 2d 350 (D. Mass. 2005) ..................................................................13

**OTHER AUTHORITIES**

Mutual Fund Distribution Fees; Confirmations, Securities Act Release No. 9128,
    Exchange Act Release No. 62544, Investment Company Act Release No. 29367, 75
    Fed. Reg. 47064 (proposed Aug. 4, 2010)........................................................9, 10

Order Approving Proposed Rule Change Relating to the Limitation of Asset-Based Sales
    Charges as Imposed by Investment Companies, Securities and Exchange Act of 1934
    Release No. 30897, 57 Fed. Reg. 30985-02 (July 13, 1992) ...................................10

**MISCELLANEOUS**

*Barron's*, "The New Champs" (Feb. 1, 2010) ...............................................................8

FUND DIRECTIONS, *18th Annual Mutual Fund Awards, Trustee of the Year Nominees* (Feb. 2011 ed.) ..................................................................................................................8

http://www.investopedia.com/terms/1/12b-1plan.asp ...................................................................11

I.   **THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A PLAUSIBLE CLAIM THAT HIFSCO'S INVESTMENT MANAGEMENT FEES ARE "SO DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE RELATIONSHIP TO THE SERVICES RENDERED"**

Plaintiff's Opposition serves only to confirm that she has no factual basis to support a plausible claim that HIFSCO's investment management fees are excessive under the stringent pleading requirements of *Twombly* and *Iqbal* and the high liability standard established by *Jones*. Instead, while paying lip service to the standards of *Twombly* and *Iqbal*, plaintiff flouts that standard by failing to plead facts, as she must, that would elevate her claim from one that is merely "*not inconceivable*" to one that is *plausible*.

The bulwark of plaintiff's case is the notion that HIFSCO received higher management fees than the Funds' sub-advisors while performing virtually no services beyond routine administrative tasks.  *See* Opp. at 14-16.  But, even if it were *conceivable* that the Hartford Funds' overwhelmingly independent Board voted, either from a perverse motive or a dearth of relevant information, to approve an arrangement in which a management company would be paid for doing virtually nothing, plaintiff has not pled a single fact that would make it *plausible*. Without such facts, plaintiff's allegations boil down to mere second-guessing the Board's business judgment in implementing a two-tier advisory structure, based on nothing but sheer conjecture that "virtually all" services are "sub-contracted" to the sub-advisor.  As the Supreme Court reiterated in *Jones*, however, § 36(b) does not authorize "judicial second-guessing of informed board decisions."  *Jones v. Harris Assocs., L.P.*, 130 S. Ct. 1418, 1430 (2010).

Plaintiff's sparse remaining factual allegations fare no better.  Rather than utilize the abundant publicly available information about how HIFSCO's fees and expense ratios compare to other two-tier advisory systems, plaintiff makes only an inapt comparison to Vanguard, Opp. at 20, which sheds no light on whether or to what extent HIFSCO's fees are excessive.

Similarly, plaintiff attempts a comparison between the Funds' fees and those charged by HIFSCO to institutional clients, without any facts about the actual services rendered to either, or any basis to suggest the comparison is meaningful.  *See* Opp. at 20-21; *Jones*, 130 S. Ct. at 1428-29.

In the end, plaintiff's "information and belief" is nothing more than naked "belief."  In the face of a litany of publicly available facts which plaintiff does not plead – because they refute rather than support her position – plaintiff suggests that she is unable to plead more because the salient facts are exclusively in HIFSCO's control.  That is not true, and even if it were, plaintiff still would be required to plead factual information that plausibly suggests that HIFSCO has excessively overcharged the Funds.  Because plaintiff has not met – and cannot meet – this burden, the management fee claim should be dismissed with prejudice.

### A.   Plaintiff tries to mask the weakness of her claim by altering the pleading standard.

Although plaintiff concedes that *Twombly* and *Iqbal* set forth the correct standard, she invokes an incorrect pleading standard throughout her Opposition.  For instance, she asserts that "'[i]t is not *inconceivable* that the fees charged . . . were so disproportionate to the value of the services rendered that a violation of § 36(b) would lie.  *That* is enough to withstand a 12(b)(6) challenge.'"  Opp. at 21 (quoting *Jones v. Harris*, No. 04 Civ. 8305, 2005 WL 831301, at *2 (N.D. Ill. Apr. 7, 2005) (emphases added)).  She also repeatedly suggests that her pleading obligation is only to put HIFSCO "on notice" that its fees must have been excessive.  Opp. at 2, 13, 24.  This is wrong.  As the Third Circuit has confirmed, the Supreme Court's recent decisions have "shifted" pleading standards "from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Six of the eight cases plaintiff cites for the proposition that cases like hers pass muster were decided pre-*Twombly* – at a time when a complaint could be dismissed only if the plaintiff could prove "no set of facts" in support of its claim – and thus offer no refuge to plaintiff.  *See* Opp. at 29-30.  Even so, some of these cases barely survived dismissal, with one court opining that the plaintiff's claims survived "only by the narrowest of margins" and accordingly allowed only limited discovery.  *Gallus v. Am. Express Fin. Corp.*, 370 F. Supp. 2d 862, 867 (D. Minn. 2005).  If anything, plaintiff's reliance on these cases, many of which parroted verbatim allegations and entire passages now reappearing in plaintiff's complaint, serves to underscore the purely hypothetical nature of the complaint.  Plaintiff should not be allowed to recycle virtually the same complaint against successive targets in the mutual fund industry simply by adding fee numbers to what is otherwise boilerplate.  Indeed, in one of the cases cited by plaintiff, the court conveyed its concern over "the significant number of statements alleging serious misconduct . . . based on 'information and belief,'" and "question[ed] whether reasonable inquiry underlies the allegations made 'on information and belief.'"  *Sins v. Janus Capital Mgmt., LLC*, No. 04-cv-1647, 2006 WL 3746130, at *2, 4 (D. Colo. Dec. 15, 2006).

As for the two post-*Twombly* cases plaintiff cites, the decisions relied heavily upon the reasoning of pre-*Twombly* cases and/or are distinguishable on their facts.  First, in *Curran v. Principal Management Corp.*, No. 09 Civ. 00433, 2010 U.S. Dist. LEXIS 83730 (S.D. Iowa June 8, 2010), *vacated in part on other grounds*, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011),[1] the court emphasized that the funds paid "four layers" of advisory and sub-advisory fees arising from the "funds of funds" structure at issue.  *Id*. at *31-32.  There is no allegation here that shareholders paid multiple times for overlapping and repetitive services, making *Curran*

---

[1] On February 14, 2011, the plaintiffs moved to reconsider the court's most recent ruling partially vacating its prior order on the grounds that plaintiffs lacked statutory standing.

inapposite.[2]  Second, in *In re Federated Mutual Funds Excessive Fee Litigation*, No. 04-532,

2009 WL 5821045 (W.D. Pa. Sept. 30, 2009), the Court allowed a complaint to stand because it

cited specific and objective evidence of disproportionality, in glaring contrast to the Complaint

here.  The Federated fund at issue contained absolutely no breakpoints at all, which the court

found in "striking contrast with the prevailing practice in the mutual fund industry."  *Id.* at *6.

The court also noted that the fund had the highest expense ratio of a group of 266 funds

evaluated by Morningstar, and had received a "Stewardship Grade" of "F" from Morningstar.

*Id.*  Plaintiff in this case has made (and can make) no similar allegations.  The *Federated* court

also relied heavily on four other decisions (also cited by plaintiff here) – all four of which were

pre-*Twombly.*  *See id.* at *8 (citing *Sins*, 2006 WL 3746130; *Hunt v. Invesco Funds Group Inc.*,

No. H-04-02555, 2006 WL 1581846 (S.D. Tex. 2006); *Dumond v. Mass. Fin. Servs. Co.*, No. 04-

11458, 2006 WL 149038 (D. Mass. Jan. 19, 2006); and *Strigliabotti v. Franklin Res., Inc.*, No.

04 Civ. 883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005)).

     *Twombly* and *Iqbal* mandate that "a complaint must do more than allege the plaintiff's

entitlement to relief.  A complaint has to 'show' such an entitlement with facts."  *Fowler*, 578

F.3d at 211.  Although plaintiff attempts to create the impression that her Complaint's thin

allegations are enough to propel a case to discovery, under the pleading standards of *Twombly*

and *Iqbal*, plaintiff's claim cannot survive.

---

[2] HIFSCO respectfully submits that the *Curran* decision was wrongly decided, citing no § 36(b) case law in support of its decision that the factual allegations were sufficient to state a claim. Nonetheless, for the reasons described above, plaintiff's allegations are sufficiently different from those in *Curran* to merit a different result here.

### B.   The few facts pled do not support a plausible inference that HIFSCO's fees could not have been the result of arms-length bargaining.

Plaintiff rests virtually her entire case on three comparisons:  First, that HIFSCO charges the Fund more than its sub-advisor charges the Funds.  Opp. at 14-15.  Second, that HIFSCO charges the Funds more than it charges institutional clients.  *Id.* at 20-21.  And, third, that HIFSCO charges more than Vanguard, a not-for-profit fund complex, charges the Funds it advises.[3]  *Id.* at 20.  The comparisons are inapt, and make no headway toward establishing that HIFSCO's fees are excessive under the *Jones* standard.

While fee comparisons can be relevant to whether an advisor's charges are excessive, standing alone, they add nothing to the § 36(b) analysis.  As the Supreme Court made plain in *Jones*, differentials between what different advisors charge different clients, or between what a single advisor charges different clients, are meaningless without context.  "[T]here may be significant differences between the services provided by an investment adviser to a mutual fund and those it provides to a pension fund which are attributable to the greater frequency of shareholder redemptions in a mutual fund, the higher turnover of mutual fund assets, the more burdensome regulatory and legal obligations, and higher marketing costs."  *Jones*, 130 S. Ct. at 1428-29.  Plaintiff offers no facts about relative services, performance, costs, redemptions, or anything else that would cause the comparisons she offers to support her claim.  She does, of course, offer the (we would submit wholly implausible) *speculation* that an independent board of the Funds has agreed to pay HIFSCO to do virtually nothing but routine, administrative tasks, while tacitly conceding that she has no idea what HIFSCO does.  *See* Opp. at 10-11, 16, 28 (complaining that all the facts are exclusively within HIFSCO's possession).  This cannot carry

---

[3] *See Amron v. Morgan Stanley Inv. Advisers, Inc.*, 464 F.3d 338, 345 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion under this [*Gartenberg*] factor.").

the day.  *See Amron*, 464 F.3d at 343; *Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140,

143 (3d Cir. 2002); *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J.

2007); *Mintz v. Baron*, No. 05 Civ. 4904, 2009 WL 735140, at *3 (S.D.N.Y. Mar. 20, 2009).

Plaintiff's attempts to bolster her position with suggestions that the Funds' board may not

have received complete information and conclusions about the extent to which HIFSCO

"meaningfully" shares economies of scale with the Fund's shareholders likewise fall short.  Opp.

at 16.  It is obvious that plaintiff alleges virtually nothing about what the Funds' board did or did

not consider in approving HIFSCO's fees – she has not offered even one fact that the board

failed to take into account.  Other courts have dismissed §36(b) claims making these same types

of assertions.  *See* Def. Mem. at 20; *see also In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D.

115, 118 (S.D.N.Y. 2007) (holding that allegations that it was "'unlikely' that [the trustees]

'could devote the amount of time required' due to the number of portfolios they oversee and their

other high level positions with other companies" are "insufficient to survive a motion to

dismiss").[4]  Similarly, courts routinely reject claims based on general conclusions about

economies of scale and profitability where the public record reflects the use of breakpoints and

no countervailing factual allegations are offered about costs and expense ratios.[5]  *See* Def. Mem.

at 20-22.[6]

---

[4] Plaintiff asserts that "shelf space" allegations concerning the 2000 to 2003 time period are relevant here, even though the time period at issue in this case is limited by Section 36(b)(3) to the year preceding the filing of the Complaint.  *See Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 685 (3d Cir. 2002).  Further, plaintiff cannot colorably allege that "shelf space" allegations – which relate solely to mutual fund *sales* practices – have anything to do with compensation for investment management services.  *See* Opp. at 17-18; Compl. Ex. 13.

[5] The Complaint's only allegations regarding profitability are that, "on information and belief," HIFSCO "employs inaccurate accounting practices in its financial reporting, including arbitrary and unreasonable cost allocations."  Compl. ¶ 104.  The plaintiff in *Janus* made a virtually identical allegation, about which the court noted that it was "troubled by the appearance of identical allegations in unrelated cases," and declared that it did "not credit Plaintiffs' allegations

As a last resort, plaintiff attempts to justify the dearth of factual support in her complaint by arguing that she cannot know the salient facts without taking discovery because the information is in HIFSCO's exclusive possession.  Opp. at 10, 16, 18, 24, 25.  But a complaint cannot survive a motion to dismiss on the mere hope that discovery will unearth evidence to support a claim.  *See Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001) ("[P]laintiffs cannot simply promise the court that once they have completed discovery, something will turn up.").  Indeed, even in a case where critical information lies only in the hands of the defendant – and that is not this case – a plaintiff must allege at least enough to make plausible the conclusion that the facts within the defendant's exclusive possession will support the claim.  *Fowler*, 578 F.3d at 213 (requiring that plaintiffs plead enough facts "to raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of]" (quoting *Twombly*, 550 U.S. at 556) (alteration in *Fowler*)).  Here, in fact, there is a vast array of salient facts available in the public record, but plaintiff has chosen not to include them in her complaint because they refute rather than buttress the plausibility of her position.  Courts have granted motions to dismiss § 36(b) claims like these prior to discovery, often pointing to the array of facts regarding mutual funds that are available to litigants in the public record.  *See* Def. Mem. at 17-18, 20-21 & n.12, 22.

---

concerning . . . profitability, all of which are made 'upon information and belief' and allege serious financial fraud and misconduct."  *Sins*, 2006 WL 3746130, at *2-3.

[6] Although plaintiff asserts that "a full picture emerges only when one examines the breakpoints offered to the Funds in comparison with the breakpoints Defendant negotiated with its sub-advisers at arm's length," Opp. at 23, "the differential in breakpoints between sub-advisors and investment advisors is irrelevant to the issue of economies of scale" because "[t]he differences in services and compensation packages alone justify the different breakpoint arrangements." *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008) (granting motion to dismiss § 36(b) claim).

The litany of SEC-mandated information that is available in the public record would
(1) enable a comparison of the Funds' fees schedules with those of other funds with two-tier
advisory structures; (2) enable a comparison of the Funds' expense ratios to those of other funds,
*see* Def. Mem. at 20-21; (3) show the extent to which the Board voted to increase or decrease
fees in recent years, *id.* at 6, 7-8; (4) show whether the Board voted to implement additional
breakpoints in recent years, *id.* at 6-7; (5) show whether the Board is comprised of the
statutorily-mandated complement of independent directors, *id.* at 5; and (6) show performance
data revealing any subpar returns for the Funds.[7]  Thus, the problem for plaintiff is not that
HIFSCO exclusively controls all the information – it is that the salient information is publicly
available but undermines her case.[8]

For these reasons, the Complaint fails to plausibly allege that the Funds' Board of
Directors decided to pay HIFSCO something for nothing.  Plaintiff has simply pointed to the
differential between HIFSCO's fees and the sub-advisors' fees as sufficient to sustain her
complaint.  But that is not enough, post-*Iqbal*, to support a plausible contention – as opposed to

---

[7] *See also Barron's*, "The New Champs" (Feb. 1, 2010) (ranking Hartford Funds in top 10 mutual fund families for 2009) attached hereto as Ex. A (excerpted and reprinted); FUND DIRECTIONS, *18ᵗʰ Annual Mutual Fund Awards, Trustee of the Year Nominees*, at 15 (Feb. 2011 ed.), attached hereto as Ex. B (noting that Hartford Funds Chair Robert Gavin "led the board in reducing fees for institutional, retirement and retail share classes of 42 equity and fixed income funds, including some that were cut by up to 30 basis points" and that Gavin "led the charge in making sure the fees were reasonable and that services were being provided at a reasonable cost to shareholders").

[8] Plaintiff cites *Curran*, 2010 U.S. Dist. LEXIS 83730, to suggest that HIFSCO's identification of facts in the public record was improper.  Opp. at 17.  Plaintiff misses the point.  HIFSCO does not contend that the Court should rule on these facts in deciding this Motion; rather, these public facts merely demonstrate, contrary to plaintiff's assertions, the variety of facts available to plaintiff that she elected not to include in her Complaint.  Moreover, the Court may, of course, take judicial notice of such publicly available facts. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323 (2007) (on motions to dismiss, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

merely a speculation that is as inconceivable as conceivable – that an independent board of directors approved fees so excessive and disproportionate that they could not have been the result of arm's-length negotiations.  Plaintiff's insistence that she cannot obtain the facts needed to make her claim plausible is belied by the myriad of facts in the public record that she quite conspicuously has failed to cite.  Because plaintiff's allegations do not meet the high pleading bar set by *Jones*, *Twombly*, and *Iqbal*, Count I should be dismissed.

## II.   THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A PLAUSIBLE CLAIM THAT HIFSCO'S 12B-1 FEES ARE "SO DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE RELATIONSHIP TO THE SERVICES RENDERED"

Plaintiff's Opposition also confirms that she has no facts to support her belief that HIFSCO's distribution fees are excessive under § 36(b).

At its essence, plaintiff's claim is that distribution fees in general are not good for shareholders, rendering them *per se* excessive.  To be sure, plaintiff is entitled to her view, but Congress and the SEC have spoken on this topic, reaching the opposite conclusion.  Thus, an argument that distribution fees fail to benefit shareholders is properly addressed to Congress or the SEC, not the courts in the guise of a § 36(b) claim.  *See, e.g.*, *In re Am. Mut. Funds Fee. Litig.*, No. 04-5593, 2009 WL 5215755, at *46 (C.D. Cal. Dec. 28, 2009) (noting that "the elimination or modification of Rule 12b-1 is a matter for the SEC").  Although the Complaint recites the history of public policy debates and some criticism over distribution fees, *see* Compl. ¶¶ 50-52, 74, plaintiff fails to mention – in the same way that her lawyers apparently led the court in *Curran* astray – that the SEC expressly authorizes these fees and just last year issued a Release recognizing that 12b-1 fees are beneficial to shareholders, for an array of reasons.  *See* Mutual Fund Distribution Fees; Confirmations, Securities Act Release No. 9128, Exchange Act Release No. 62544, Investment Company Act Release No. 29367, 75 Fed. Reg. 47064, 47065

(proposed Aug. 4, 2010) (hereinafter, "SEC 2010 Release") (current 12b-1 system provides investors "choices as to how they pay for [brokerage] services"); *id.* at 47111 (proposed new rule "would benefit investors by permitting funds to continue to pay for [with distribution fees] . . . follow-up services provided to investors by brokers and other intermediaries after the sale has been made"); *id.* at 47111-12.

        In apparent recognition that her all-out attack on the legitimacy of distribution fees must fail, plaintiff falls back to another public policy argument: that, in her view, distribution fees calculated as a percentage of assets under management should not be allowed, and are thus *per se* excessive. Opp. at 7. But, pursuant to statutory authority, the Financial Industry Regulatory Authority ("FINRA") (formerly the National Association of Securities Dealers ("NASD")) explicitly allows funds to pay distribution fees of up to 75 basis points on assets under management – three times the amount at issue here. And the SEC has approved FINRA's rule. *See* Order Approving Proposed Rule Change Relating to the Limitation of Asset-Based Sales Charges as Imposed by Investment Companies, Securities and Exchange Act of 1934 Release No. 30897, 57 Fed. Reg. 30985-02, 30889 (July 13, 1992) (agreeing that FINRA/NASD's fee limit has "carrie[d] out the NASD's congressional mandate to prevent excessive sales charges on mutual funds shares"); SEC 2010 Release, 75 Fed. Reg. at 47069 (discussing SEC approval of FINRA/NASD rules). In fact, a proposed amendment to Rule 12b-1 from 1988 requiring 12b-1 payments to be linked to specific distribution services – as plaintiff argues should be done here – was never adopted by the Commission. *See* SEC 2010 Release, 75 Fed. Reg. at 47068 n.63 (discussing 1988 proposals). Nonetheless, asset-based fee calculation is the singular "fact" that plaintiff offers as a basis of liability for this claim. HIFSCO's calculation of 12b-1 fees is therefore "not only compatible with, but indeed [is] more likely explained by, lawful . . .

behavior," and does not plausibly support plaintiff's claim.  *See Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1950 (2009).  In short, the assessment of fees as a percentage of assets under management

is recognized as a fundamental aspect of the mutual fund industry, and the mere fact that the

Funds' fees are calculated in this standard fashion cannot form the basis for a plausible allegation

that the fees are "so disproportionate" under *Jones*.  *See, e.g.*, http://www.investopedia.com/

terms/1/12b-1plan.asp (noting that 12b-1 fees are typically paid on "an annual percentage based

on the current value of the investment on an annual basis").

       The true test for whether distribution fees meet the *Jones* standard obviously must focus

on the *amount* of the fees – not the method of calculation.  Here, plaintiff makes only a half-

hearted effort by attempting to piggy-back her claim about 12b-1 fees onto her fatally flawed

claim for investment management fees.  *See* Opp. at 27 (". . . Plaintiff's Complaint should be

read as a whole.").  This is apparently because, notwithstanding the fatal paucity of facts

supporting her investment management fee claim, there is even *less* substance to her distribution

fee claim.  In support of this tacking-on tactic, plaintiff quotes *Meyer v. Oppenheimer*

*Management Corp.*, 764 F.2d 76, 83 (2d Cir. 1985), for the proposition that "'payments made

under Rule 12b-1 are excessive when combined with advisory fees, where both payments are

made to 'affiliated persons' of an investment adviser.'"  Opp. at 27.  However, as the Second

Circuit explained in a subsequent ruling in that case:

> This statement stands only for the proposition that the costs of 12b-1 plans
> involving such affiliates as well as advisory fees are subject to review under
> Section 36(b). . . . The statement does not, however, stand for the additional
> proposition that 12b-1 payments to an adviser's affiliates are to be aggregated
> with advisory fees to determine the merits of a Section 36(b) claim. . . . If the fee
> for each service viewed separately is not excessive in relation to the service
> rendered, then the sum of the two is also permissible.

*Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 866 (2d Cir. 1990).  As the Second Circuit

noted in *Meyer*, "[t]he two kinds of payments are for entirely different services, namely advice

on the one hand and sales and distribution on the other." *Id.* Accordingly, Counts I and II must be analyzed separately.

Taken alone (or even together), plaintiff's allegations about the 12b-1 fees plainly fail to state a plausible claim under *Twombly* and *Iqbal*. While apparently conceding that her distribution fees claim must be judged by the *Jones* standard, Opp. at 28, plaintiff does not even allege the necessary conclusion – much less facts to support it – that the distribution fees were "so disproportionately large that they bear no reasonable relationship to the services rendered." Similarly, the Opposition fails to make even passing reference to the distribution services that HIFSCO, as the Funds' distributor, provides in exchange for the fees charged. *See* Opp. at 27-28. Plaintiff instead dances around the relevant standard, merely cataloging her own subjective (and factually unsupported) opinions for why the fees should be found improper: the fees are "not benefiting the Funds the way they are supposed to benefit them"; the fees are "simply another mechanism for Defendant to extract additional compensation from the Funds"; and the "benefits of the 12b-1 fees have served only Defendant." Opp. at 7-8, 27-28. But plaintiff's "no-benefit" theory is nowhere found in *Jones* or the language of § 36(b).

Courts have dismissed similar claims regarding 12b-1 distribution fees where, as here, plaintiffs have failed to plead excessiveness of the fees in the context of the services provided. *See, e.g.*, *Amron*, 464 F.3d at 345 ("The Complaints again point to the size of the 12b-1 and advisory fees, but make no allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed."); *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d at 687 (holding that if plaintiffs were allowed to state a § 36(b) claim "based upon such paltry allegations" as these generic assertions, "then any fund that grew over time while not simultaneously lowering its fees would be subject to suit under the ICA.

This cannot be allowed"); *Yameen v. Eaton Vance Distribs., Inc.*, 394 F. Supp. 2d 350, 356 (D. Mass. 2005); *Hoffman*, 591 F. Supp. 2d at 539; *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921, 2007 WL 2325862, at *4, 14-15 (S.D.N.Y. Aug. 14, 2007); *ING Principal Protection Funds Deriv. Litig.*, 369 F. Supp. 2d 163, 166 (D. Mass. 2005); *Levy v. Alliance Capital Mgmt. L.P.*, No. 97 Civ. 4672, 1998 WL 744005, at *4 (S.D.N.Y. Oct. 26, 1998) (granting motion to dismiss where plaintiff "fail[ed] to explain how the fees and expenses are excessive in light of the 'Gartenberg' factors that courts consider"); *Olesh v. Dreyfus Corp.*, No. 94 Civ. 1664, 1995 WL 500491, at *19, 21 (E.D.N.Y. Aug. 8, 1995) (granting motion to dismiss § 36(b) claim for failing to allege that the fee is so disproportionately large that it bears no reasonable relationship to the services rendered). *See also* Def. Mem. at 26-28.

Choosing to ignore those cases, plaintiff asserts that her allegations are "very similar" to the allegations made in *Gallus* and *Curran*. Opp. at 28. Plaintiff fails to mention that the *Gallus* court, although applying the more liberal pre-*Twombly* pleading standard, granted plaintiff only "limited discovery" because the court had "considerable concerns" about the claim, and did so only after "remind[ing]" the plaintiffs that "the Court will not hesitate to dismiss this count if it becomes clear that Plaintiffs are attempting to use this Court to challenge the basic nature of the distribution fee system." *Gallus*, 370 F. Supp. 2d at 867-88.

Plaintiff also notes her Complaint's similarities to the complaint in *Curran*. Opp. at 28. As noted in its opening brief, HIFSCO respectfully submits that the *Curran* court misapplied the *Jones* standard in declining to dismiss the plaintiff's 12b-1 fee claim. Def. Mem. at 29 n.19. In addition, HIFSCO believes that the *Curran* court mistakenly credited plaintiff's allegation that "the distribution fees are excessive because they are based on the net asset value of the Subject Funds, rather than the distribution activity, *i.e.*, the number of shares sold." 2010 U.S. Dist.

LEXIS 83730, at *40-41.  The parties did not bring to the *Curran* court's attention the SEC's statements and actions approving of asset-based 12b-1 fees, cited above.  And plaintiff's same lawyers here have repeated that transgression.  Indeed, the logical extension of *Curran*'s holding is that a cookie-cutter 12b-1 fee claim could be stated against *any* fund complex where the fees are calculated as a percentage of the fund's net assets – which is essentially every fund complex in the industry receiving such fees.  As discussed above, there is no support in law or fact for the proposition that this method of calculation alone plausibly supports a conclusion that distribution fees are excessive under the "so disproportionately large" standard in *Jones*.  *See Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (citation and internal quotations omitted)).  Therefore, this Court should decline to adopt the reasoning of *Curran*.

Plaintiff's Opposition simply fails to point to any necessary factual support for her 12b-1 distribution fee claim.  By failing to allege facts about the nature or quality of the distribution services financed by these fees, plaintiff has offered no yardstick of any kind with which the Court can measure the alleged excessiveness of the 12b-1 fees, or their proportionality against the services rendered.  Accordingly, under *Jones*, *Twombly*, and *Iqbal*, Count II must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in HIFSCO's Opening Brief,

HIFSCO respectfully requests that the Court enter an order dismissing the Complaint with

prejudice for failure to state a claim.

Respectfully submitted,

Of Counsel:

<u>/s/ John M. Seaman</u>
John M. Seaman (#3868)

Harvey J. Wolkoff                     A. Thompson Bayliss (#4379)
Robert A. Skinner                     Eric D. Selden (#4911)
Janna J. Hansen                       ABRAMS & BAYLISS LLP
Allison M. Boscarine                  20 Montchanin Road, Suite 200
ROPES & GRAY LLP                      Wilmington, Delaware  19807
Prudential Tower                      (302) 778-1000
800 Boylston Street                   seaman@abramsbayliss.com
Boston, Massachusetts  02199-3600     bayliss@abramsbayliss.com
                                      selden@abramsbayliss.com

                                      *Attorneys for Defendant Hartford Investment*
Dated:  February 22, 2011             *Financial Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2011, I electronically filed the foregoing *Reply Memorandum* with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that on February 22, 2011, I caused to be served true and correct copies of the foregoing document on the following counsel as indicted below:

**Via Hand Delivery**

Carmella P. Keener
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
Wilmington, Delaware 19899-1070

**Via U. S. Mail, Postage Prepaid**

Michael D. Woerner
Tana Lin
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052

**Via U. S. Mail, Postage Prepaid**

Diana A. Nygaard
THE NYGAARD LAW FIRM
11050 Roe Avenue, Suite 212
Leawood, Kansas 66211

**Via U. S. Mail, Postage Prepaid**

Guy M. Burns
Jonathan S. Coleman
Aleksas A. Barauskas
JOHNSON, POPE, BOKOR,
  RUPPEL & BURNS LLP
403 E. Madison Street, Suite 400
Tampa, Florida 33602

**Via U. S. Mail, Postage Prepaid**

Michael Brickman
James C. Bradley
Nina H. Fields
RICHARDSON, PATRICK, WESTBROOK,
  & BRICKMAN, LLC
174 E. Bay street
Charleston, South Carolina 29401

  */s/ John M. Seaman*
John M. Seaman (#3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
seaman@abramsbayliss.com